**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**August MALES, Jr.,**
**Defendant-Appellant.**

**No. 82–5851**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1983.

Michael A. Matters, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Nancy L. Worthington, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In October, 1976, DEA Agent Forrest Beverly, working undercover, went to a motel room to purchase a quantity of cocaine. In the motel room, Beverly met with Stephen Vilmain and an informant named Mark Aftuck. After negotiations were completed, Vilmain left the room to get the cocaine and when he returned, he was accompanied by John Keen. Keen produced a pound of cocaine from a paper bag and handed it to the agent. Beverly then inquired about the possibility of undertaking another similar transaction and Keen told Beverly that if he could wait until 6:00 p.m. that same evening, Keen could probably get more drugs. Thereupon Vilmain and Keen were placed under arrest.

Keen agreed to cooperate with the authorities and presented appellant August Males as the source of the cocaine. Keen informed the agents that he had no way of contacting Males and would have to wait to be contacted by him. With Keen's permission, recording devices were attached to his person and his telephone. On the same evening of the arrest, Keen received a call

from Males. A meeting was set up to take place in the parking lot of Keen's apartment later that evening. When Males arrived, DEA agents observed the two men talking and recorded a conversation concerning the possibility of Males supplying more cocaine.

Males was arrested and subsequently charged in a two count indictment with possession with intent to distribute cocaine and with distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). After a jury trial, Males was found guilty on both counts. He now appeals his conviction.

I.

Males first challenges the district court's denial of his motion for judgment of acquittal, claiming that the government failed to introduce sufficient evidence at trial to establish venue. Specifically, Males contends that the government failed to prove that the offense took place in "Dade County, in the Southern District of Florida," as alleged in the indictment.[1]

The constitution guarantees the right of criminal defendants to be tried in the state and district in which the crime was committed. U.S. Const. amend. VI. *See also* Fed.R.Crim.P. 18. When faced with a claim of improper venue, the standard of review this court must apply is "whether, viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in favor of the jury verdict ... the Government proved by a preponderance of the evidence" that the crimes occurred within the Southern District of Florida. *United States v. White,* 611 F.2d 531, 535 (5th Cir.) (citations omitted), *cert. denied,* 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980). This burden can be met through the use of direct or circumstantial evidence. *United States v. Wuagneux,* 683 F.2d 1343, 1357 (11th Cir.1982), *petition for cert. filed,*

1. The government argues that Males waived the challenge by not preserving it in the district court. This argument is without merit. As the government points out in its brief, Males moved for a judgment of acquittal at the close

of the evidence on the ground that "the government has not proved each and every element of the indictment." The location of the offense was included as an element alleged in the indictment.

51 U.S.L.W. 3775 (U.S. April 14, 1983) (No. 82–1687); *United States v. Davis,* 666 F.2d 195, 199, 200 (5th Cir. Unit B. 1982).

■ There was no direct testimony during trial that the offenses took place in Dade County, Florida. A review of the record, however, indicates that there were a sufficient number of references to the City of Miami from which the jury could have inferred proper venue.[2] Agent Beverly testified that soon after Keen was arrested the cocaine was taken to the "Miami Regional Laboratory." Another agent testified that Keen was taken to the Miami regional office and arrived there "about 15 minutes after his arrest." Although the motel where the arrest took place was never described as being in Miami, it was identified as the Howard Johnson's at 7330 N.W. 36th Street, and one witness testified that the hotel was near the airport. Moreover, Keen's apartment, where Keen allegedly received the cocaine from Males, was described on several occasions as being at 8267 S.W. 128th Street. Keen testified that he lived in the Sunshine Point Condominium, at S.W. 128th Street near 82nd Avenue. Similar references to local streets and buildings have been found by the former Fifth Circuit to be sufficient to establish venue. *See generally United States v. Turner,* 586 F.2d 395, 397 (5th Cir.1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979).

Additionally, during opening argument the government described the Howard Johnson's as being near the Palmetto Expressway, a throughfare which Males admits is associated with Miami.[3] Although not evidence, argument of counsel "are factors which the jury may consider to infer that the offense was committed in the location as charged." *Weaver v. United States,* 298 F.2d 496, 497 (5th Cir.1962).

In the final analysis, therefore, viewing all of the evidence in the light most favorable to the government, we find that venue was established by a preponderance of the evidence and that the district court did not err in denying Males' motion for judgment of acquittal.

II.

Males also argues on appeal that the trial court erred in admitting evidence of extrinsic acts. He claims that, despite his objections,[4] the government was permitted to question Keen about previous transactions involving cocaine, in violation of Fed.R. Evid. 404(b), and that the error was compounded by the court's failure to give a cautionary instruction to the jury.[5] The challenged testimony was as follows:

Q. When did you first meet Mr. Males?

A. I believe around September of 75

. . . .

Q. And as a result of that meeting, did you have occasion to participate in any narcotics transactions with Mr. Miles?

A. Yes, I did.

Q. How did these transactions occur?

Defense counsel: Objection, irrelevant and immaterial. We are talking about October 21st.

The Court: Overruled.

A. I would be fronting goods and in return I would sell it and give the money back to him.

Q. When you use the term, "front," what do you mean?

A. It was given to me on a, without putting my money up.

Q. By whom?

---

**2.** This court can take judicial notice that Miami is in Dade County, Florida. *See Gov't. of Canal Zone v. Burjan,* 596 F.2d 690, 693 (5th Cir. 1979).

**3.** Brief of Appellant, page 20 n. 2.

**4.** The defense counsel objected twice during Keen's direct testimony concerning prior drug

transactions: once on relevancy as to time and once relating to a leading question. Counsel did not object to the nature of the testimony as evidence of extrinsic acts.

**5.** Defense counsel never requested a limiting or cautionary instruction relating to "other acts."

A. Mr. Males.

Q. And you would sell the quantity of drugs?

A. Yes, sir.

Defense counsel: Objection, leading the witness.

The court: Do not lead the witness, Counselor ....

Q. Did you continue to have contact with Mr. Males?

A. Yes, I did.

Q. In the same manner that you previously described?

A. Yes, sir.

The instant case is similar to the situation addressed by this court in *United States v. Costa,* 691 F.2d 1358 (11th Cir.1982). In that case, Costa and Campbell, a co-defendant, were indicted and charged with possession, and conspiracy to possess, cocaine with intent to distribute. Campbell cooperated with authorities and named Costa as his source. During trial, Campbell was permitted to testify as to previous cocaine dealings with Costa. On appeal, Costa challenged the introduction of the testimony citing Rule 404(b). The court rejected that challenge and held that since "[t]he evidence concerning the prior acts and that used to prove the crime charged were inextricably intertwined," Rule 404(b) did not come into play. *Id.* at 1361. In so ruling, the court found that the "testimony about Costa's previous dealings in cocaine was necessary because it formed an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.*

█ In the case at bar, the testimony in question was elicited to show how Keen was able to have cocaine fronted to him by Males, and then pay for it later. Keen testified further that the cocaine in the charged offenses came to him in the same manner. The evidence was not extrinsic to the charged offenses, and the district court did not abuse its discretion in admitting it.

III.

Finally, Males argues that plain error occurred at two points during the government's closing argument. First, Males claims that the government improperly commented on his refusal to testify. Second, he claims that error occurred when the government commented that Keen feared bodily harm because he had cooperated with the authorities against Males. In reviewing these claims, it is unnecessary for this court to apply the plain error standard because no reversible error occurred.

During closing argument, Male's attorney stated to the jury: "The defendant did not testify in this case because there was nothing he could testify to, other than he was not guilty." In response to this statement, the government commented:

Mr. Bloom also made this statement, the defendant did not testify because he could not say anything other than he is not guilty.

Well, think about that for a while and think about that when you go back in to deliberate, whether or not the defendant could have said anything else, if he could have shed some light on something that may be said during the course of this trial.

█ The doctrine of "invited error" applies here. Under that doctrine, "where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error." *United States v. Doran,* 564 F.2d 1176, 1177 (5th Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). The doctrine has been applied to arguably impermissible comments during closing argument. *See United States v. Meneses-Davila,* 580 F.2d 888, 895–96 (5th Cir.1978); *United States v. Sullivan,* 421 F.2d 676, 677 (5th Cir.1970). The record indicates that the government's comment in the case at bar was in response to defense counsel's reference to his client's silence. Accordingly, the admission of the arguably impermissible comment does not constitute reversible error.

Similarly, Male's argument with regard to the government's comment that Keen

feared bodily harm must also be rejected. On several occasions during cross-examination, defense counsel questioned witnesses concerning the payment of $500 in relocation money to Keen. During closing argument, defense counsel raised the $500 payment several times in an attempt to argue to the jury that the money was paid as an inducement for favorable testimony. It was in response to this invitation by defense counsel that the government, in its closing argument, argued to the jury that the money was paid to Males in order to relocate because he feared bodily harm. Again, under the "invited error" doctrine, the admission of the government's argument that Keen feared harm is not reversible error. *See United States v. Meneses-Davila,* 580 F.2d at 895–96; *United States v. Doran,* 564 F.2d at 1177.

Because we find that none of the contentions raised by the appellant merit reversal, we

AFFIRM.