[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10249
_____

D.C. Docket No. 5:11-cv-00429-SDM-PRL

ROBERT MOORE,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 13, 2019)

Before MARCUS, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner-Appellant Robert Moore ("Moore") asks this Court to determine

whether the district court properly denied his amended 28 U.S.C. § 2254 petition

as untimely.  Having carefully reviewed the briefs, the relevant parts of the record, and the relevant case law—and with the benefit of oral argument—we conclude that the district court erred in holding that Moore's amended petition was untimely. We remand for further proceedings consistent with this opinion.

This case involves complicated facts, but the legal issues are clear.  We assume the parties are familiar with both the facts and the procedural posture of this case.  Therefore, we summarize the facts and proceedings only insofar as necessary to provide context for our decision.

**I.**

Following a trial in the circuit court for Citrus County, Florida, a jury convicted Moore of attempted second-degree murder and aggravated battery.  The State of Florida appealed his initial sentence, and Moore cross-appealed on evidentiary grounds not relevant here.  On September 11, 2009, Florida's Fifth District Court of Appeal ("Fifth DCA") affirmed the conviction and remanded to the trial court for resentencing.  State v. Moore, 19 So. 3d 408, 409 (Fla. 5th DCA 2009).  The trial court imposed a new sentence, and Moore appealed again.  On September 7, 2010, the Fifth DCA affirmed the new sentence in an unreasoned one-word per curiam opinion.  See Moore v. State, 44 So. 3d 598 (Fla. 5th DCA 2010).  The mandate issued in the resentencing appeal on September 29, 2010.  As

2

we see below in part IV.B.2, the two-year state law statute of limitations began to run on September 29, 2010.

A number of postconviction motions and petitions followed. On October 25, 2010, Moore filed a Rule 3.850 motion in state court alleging six claims of ineffective assistance of trial counsel and one claim of cumulative error. On December 6, 2010, while his Rule 3.850 motion was still pending, Moore's time for filing a petition for the writ of certiorari with the Supreme Court of the United States expired. The state court denied the Rule 3.850 motion on January 25, 2011, and the Fifth DCA affirmed in another unreasoned per curiam opinion. See Moore v. State, 63 So. 3d 780 (Fla. 5th DCA 2011). The mandate issued in the appeal from the denial of Moore's Rule 3.850 motion on June 8, 2011. As we see below in part IV.B.1, the one-year clock under the federal Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") started to run on June 8, 2011.

On July 21, 2011, Moore sought federal habeas relief under 28 U.S.C. § 2254 in the United States District Court for the Middle District of Florida. Nearly a year later, and some 316 days after June 8, 2011 when the mandate issued in his Rule 3.850 motion appeal (the time at which the AEDPA clock started running), Moore filed his first state habeas petition in the Fifth DCA on April 19, 2012. In this petition, he raised for the first time several claims of ineffective

3

assistance of appellate counsel.  The Fifth DCA denied this petition in an unreasoned order dated July 10, 2012.  It denied rehearing on August 10, 2012.

Twenty days later, on August 30, 2012, Moore filed a second state habeas petition in the Fifth DCA.  This time, Moore alleged appellate counsel affirmatively misled him with respect to certain postconviction rights and timelines.  The Fifth DCA denied this petition in another unreasoned order dated September 20, 2012.  On October 31, 2012, it refused Moore's request for a rehearing on his second state habeas petition.

Moore filed an amended federal habeas petition on November 15, 2012.  This amendment restated some of Moore's previous claims while also adding new ineffective-assistance-of-appellate-counsel claims.  The district court denied the ineffective-assistance-of-trial-counsel claims on the merits and rejected the ineffective-assistance-of-appellate-counsel claims as untimely.  This appeal concerns only these claims of ineffective assistance of appellate counsel, which the district court thought were untimely.  See Moore v. Sec'y, Fla. Dep't of Corr., No. 5:11-CV-429-OC-23PRL, 2014 WL 758008, at *4 (M.D. Fla. Feb. 26, 2014).  In this initial order, the district court held that these latter (ineffective assistance of appellate counsel) claims were untimely based on a mistaken belief that the date on which Moore's judgment became final for purposes of the one-year federal habeas

4

statute of limitations was October 6, 2010,[1] rather than the proper date of December 6, 2010 (when Moore's time for seeking a writ of certiorari in the Supreme Court of the United States actually expired and the judgment actually became final).[2]  See infra, part IV.B.1.

The district court went on to make three other post-trial rulings that are relevant to this appeal.  In his initial Rule 60(b)(6) motion, Moore pointed to the error in the district court's judgment on grounds it had misapplied applicable precedent in running the federal habeas statute of limitations from October 6, 2010 instead of December 6, 2010.  The district court agreed with Moore, but denied his motion on different grounds: the district court ruled that Moore's first state habeas petition was untimely for a different reason, and thus did not toll the federal habeas statute of limitations.  In so holding the district court relied on Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir. 1989), and suggested that the state court, in its unreasoned decision, should be presumed to have found Moore's first state habeas to be untimely.  The district court drew this inference based on the fact that (1) the State argued in response to Moore's first state habeas petition that the petition was untimely (i.e., filed after the state two-year statute of limitations had expired), and

---

[1] The district court mistakenly believed Moore had forfeited the ninety-day time period to file for certiorari to the United States Supreme Court.

[2] The district court itself acknowledged this error in its subsequent Rule 60(b)(6) order, and thus this is not an issue in this appeal.

5

(2) the Fifth DCA had not clearly indicated in its unreasoned opinion denying the petition that it had reached the merits.[3]

Moore later filed two separate Rule 59(e) motions. In the first motion, he argued that the district court erred in denying his Rule 60(b)(6) motion because, notwithstanding the State's untimeliness arguments, his first state habeas petition was timely. Although the district court did not expressly acknowledge error in relying on the Bennett presumption to conclude in its Rule 60(b)(6) decision that Moore's first state habeas petition was untimely, in its first Rule 59(e) decision, the district court simply shifted to another new and different ground for reaching the same result. Pursuant to this new and different reason, the district court observed that under Florida law Moore's judgment became final on November 6, 2009, when the Fifth DCA entered its mandate in Moore's initial conviction appeal prior to resentencing. The district court thought the fact "that Moore was subsequently re-sentenced is irrelevant." This led the district court to conclude that Moore's first state habeas petition was untimely, which meant that his amended federal habeas petition was also untimely because Moore lost the benefit of any tolling effect the pending state habeas petition would have had on the federal habeas statute of limitations. The court went on to deny Moore's first Rule 59(e) motion.

---

[3] As we note in the paragraph immediately following, the district court retreated from this reliance on Bennett in its first Rule 59(e) decision. Moreover, as we note in part IV.C below, the district court erroneously relied on Bennett.

6

Moore's second Rule 59(e) motion followed shortly thereafter. This time he primarily argued that no mandate issued on November 6, 2009 following his initial conviction appeal because that appeal was not finalized until the Fifth DCA entered its September 29, 2010 mandate after the resentencing appeal. Given this, Moore asserted he "had 2 years from September 29, 2010, to file any postconviction proceedings." Finding no newly discovered evidence justifying reconsideration or any manifest errors of law, the district court denied Moore's second Rule 59(e) motion.

## II.

This Court granted a certificate of appealability ("COA") to consider whether the district court properly denied Moore's amended 28 U.S.C. § 2254 petition as untimely. The answer to this question depends primarily on whether Moore's two state habeas petitions were timely filed under the two-year state statute of limitations applicable to his state petitions for habeas relief.

If both petitions were timely filed, they would have tolled the applicable federal habeas statute of limitations during their pendency for a total of 175 days (113 days for the first petition and 62 for the second). This would be enough—just enough, in fact—to make Moore's amended federal habeas petition timely filed with fourteen days to spare.

7

In its Rule 60(b)(6) order, the district court acknowledged the error it made in its initial order. Thus, we need address only the district court's denial of Moore's Rule 60(b)(6) motion and his two Rule 59(e) motions. Although the district court is entitled to significant deference in these post-trial motions, the district court committed reversible error in all three rulings.

### III.

The scope of our review in a habeas appeal is limited to the issues described in the COA. Murray v. United States, 145 F.3d 1249, 1250–51 (11th Cir. 1998). Although we ordinarily review a district court's decision to dismiss a petition for habeas relief as untimely applying a de novo standard of review, Damren v. Florida, 776 F.3d 816, 820 (11th Cir. 2015), an appeal from a Rule 60(b)(6) ruling is subject to "limited and deferential appellate review," Arthur v. Thomas, 739 F.3d 611, 628 (11th Cir. 2014) (citation omitted). Consequently, this Court will not reverse unless there has been an abuse of discretion. Id. An abuse of discretion occurs when the district court makes a clear error of judgment or applies the wrong legal standard. Id. Before a district court, a motion for relief from a judgment under Rule 60(b)(6) requires a showing of "extraordinary circumstances." Id. (quoting Gonzalez v. Crosby, 545 U.S. 524, 535, 125 S. Ct. 2641, 2649 (2005)). Such circumstances include, in the appropriate case, "the risk of injustice to the parties and the risk of undermining the public's confidence in the

8

judicial process." Buck v. Davis, ___ U.S. ___, 137 S. Ct. 759, 778 (2017) (citation and internal quotation marks omitted).

Rule 59(e) motions are also reviewed for abuse of discretion. Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007). Here again, a "district court's denial of [a] Rule 59(e) motion based on a miscomprehension of the law [is] an abuse of discretion." Stansell v. Revolutionary Armed Forces of Colom., 771 F.3d 713, 746 (11th Cir. 2014) (citation omitted). A district court should only grant a Rule 59(e) motion in the first place on grounds of "newly-discovered evidence or manifest errors of law or fact." King, 500 F.3d at 1343 (citation omitted). Rule 59(e) motions are not meant to be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Id.

## IV.

## A.

The federal AEDPA provides that persons in custody pursuant to the judgment of a state court may petition a federal court for relief. See 28 U.S.C. § 2254(b)(1). Such petitions are subject to AEDPA's one-year statute of limitations, which runs from, among other dates not applicable here, "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review." Id. § 2244(d)(1)(A).

9

The one-year AEDPA statute of limitations must, however, be read along with the nearby tolling provision, which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [§ 2244(d)]." Id. § 2244(d)(2). As a result, we are left with "a statute that all agree gave state prisoners a full year (plus the duration of state collateral proceedings) to file a federal habeas corpus petition." Duncan v. Walker, 533 U.S. 167, 190, 121 S. Ct. 2120, 2134 (2001) (Breyer, J., dissenting).

In the AEDPA tolling context, the Supreme Court has instructed that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361, 364 (2000). Moreover, the Supreme Court has made it perfectly clear that "time limits, no matter their form, are 'filing' conditions." Pace v. DiGuglielmo, 544 U.S. 408, 417, 125 S. Ct. 1807, 1814 (2005).

Importantly, though, "the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free from procedural bar." Artuz, 531 U.S. at 9, 121 S. Ct. at 364. Indeed, "[o]nly individual claims, and not the application

10

containing those claims, can be procedurally defaulted." Id. Put another way, "even though an application may not succeed in obtaining the desired relief, it may still be considered 'properly filed' so long as it satisfies the statutory filing conditions." Thompson v. Sec'y, Dep't of Corr., 595 F.3d 1233, 1236 (11th Cir. 2010) (citations omitted); see also Hardy v. Sec'y for Dep't of Corr., 246 F.3d 1300, 1302 (11th Cir. 2001) (vacating and remanding where district court denied potentially successive petition because it was error to consider "such a procedural bar to granting relief as proof that the application was '[im]properly filed'") (alteration in original) (citation omitted).

## B.

It is clear that, applying the correct federal and state law, the amended federal habeas petition Moore filed on November 15, 2012 was timely filed. The State does not—and could not—dispute that. To demonstrate why this is so, this subpart sets forth the material procedural events affecting Moore's ability to timely seek federal habeas relief under AEDPA, which are as follows:

- **September 7, 2010:** The Fifth DCA affirms Moore's resentencing on direct appeal. For the reasons discussed infra at part IV.B.1, Moore's time for seeking review in the Supreme Court of the United States starts running.

- **September 29, 2010:** The Fifth DCA enters the appellate mandate in Moore's direct appeal following resentencing. For the reasons discussed infra at part IV.B.2, the two-year statute of limitations applicable to state habeas petitions alleging ineffective assistance of appellate counsel starts running.

11

- **October 25, 2010:** Moore files a Rule 3.850 motion in Florida state court seeking postconviction relief for ineffective assistance of trial counsel.

- **December 6, 2010:** For the reasons discussed infra at part IV.B.1, Moore's conviction and sentence become final for purposes of the AEDPA one-year statute of limitations. Thus, the AEDPA one-year statute of limitations would have started running on this date but for Moore's then-pending Rule 3.850 motion.

- **June 8, 2011:** The Fifth DCA enters its appellate mandate after affirming the denial of Moore's Rule 3.850 motion. For the reasons discussed infra at part IV.B.1, the AEDPA one-year statute of limitations starts running.

- **July 21, 2011:** Moore files his initial federal habeas petition alleging ineffective assistance of trial counsel. The AEDPA one-year statute of limitations is unaffected by this filing and continues running.

- **April 19, 2012:** Moore files his first state habeas petition in the Fifth DCA alleging ineffective assistance of appellate counsel. For the reasons discussed infra at part IV.B.2, this filing tolls the one-year AEDPA statute of limitations after 316 of 365 days have passed.

- **August 10, 2012:** After denying Moore's first state habeas petition, the Fifth DCA denies his request for rehearing. For the reasons discussed infra at part IV.B.3, tolling stops and the AEDPA one-year statute of limitations starts running again.

- **August 30, 2012:** Moore files his second state habeas petition in the Fifth DCA alleging appellate counsel affirmatively misled him. For the reasons discussed infra at part IV.B.2, this filing again tolls the one-year AEDPA statute of limitations after another 20 days have passed (with a cumulative total of 336 of 365 days now having passed).

- **October 1, 2012:** For the reasons discussed infra at part IV.B.2, the two-year statute of limitations applicable to state habeas petitions alleging ineffective assistance of appellate counsel expires.

- **October 31, 2012:** After denying Moore's second state habeas petition, the Fifth DCA denies his request for rehearing. For the reasons discussed infra at part IV.B.3, tolling stops and the AEDPA one-year statute of limitations starts running again.

12

- **November 15, 2012:** Moore files an amended federal habeas petition alleging ineffective assistance of appellate counsel.  At this point, another 15 days of the one-year AEDPA statute of limitations have passed (with a cumulative total of 351 of 365 days now having passed).  See discussion infra, at part IV.B.4.

- **November 29, 2012:** AEDPA one-year statute of limitations fully expires.

In support of the foregoing timeline, the following subparts describe in greater detail (1) when the one-year AEDPA statute of limitations applicable to Moore's federal habeas petition started running, (2) why both of his state habeas petitions were timely and properly filed, (3) why his state habeas petitions tolled that statute of limitations for a collective total of 175 days, and (4) why Moore's amended federal habeas petition was in fact timely.

### 1.    The one-year AEDPA statute of limitations applicable to Moore's federal habeas petition started running on June 8, 2011.

The one-year AEDPA statute of limitations starts running on "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  The Supreme Court has identified a two-pronged analysis for determining when a judgment becomes final for purposes of AEDPA.  See Gonzalez v. Thaler, 565 U.S. 134, 150, 132 S. Ct. 641, 653–54 (2012).  The first prong involves "petitioners who pursue direct review all the way to [the Supreme Court of the United States]."  Id. at 150, 132 S. Ct. at 653.  For those petitioners, the judgment

13

becomes final when the Supreme Court either "affirms a conviction on the merits or denies a petition for certiorari." Id. For all others, the second prong of the Supreme Court's analysis indicates that "judgment becomes final . . . when the time for pursuing direct review in [the Supreme Court], or in state court, expires." Id. at 150, 132 S. Ct. at 654.

When a petitioner has exhausted all available avenues in the relevant state courts, the time for pursuing review in the Supreme Court of the United States is governed by Supreme Court Rules 13.1 and 13.3, which together provide that "a petition for a writ of certiorari to review a judgment . . . entered by a state court of last resort . . . is timely when it is filed . . . within 90 days after entry of the judgment . . . and not from the issuance date of the mandate." Sup. Ct. R. 13.1, 13.3. In applying these rules, this Court has held that it is "the entry of the judgment, and not the issuance of the mandate . . . that starts the running of the time for seeking Supreme Court review within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A)." Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006). Importantly, the Supreme Court of Florida lacks the jurisdictional power to review a per curiam affirmance filed by an intermediate state appellate court without a reasoned opinion. Grate v. State, 750 So. 2d 625, 626 (Fla. 1999); see also Garcia v. Sec'y, Fla. Dep't of Corr., No. 5:12-cv-384-Oc-30PRL, 2013 WL 6768232, at *3 n.3 (M.D. Fla. Dec. 19, 2013) (discussing

14

application of AEDPA statute of limitations in context of jurisdictional limitations on the Supreme Court of Florida).

Disregarding for the moment any tolling effect of Moore's Rule 3.850 motion, Moore was correct when he argued in his Rule 60(b)(6) motion that the one-year AEDPA statute of limitations applicable to his federal habeas petition started running on December 6, 2010 (the date his conviction and sentence became final for purposes of AEDPA). This is because Moore sought review in the Fifth DCA and was not entitled to pursue any further appeal in the Supreme Court of Florida, which lacked jurisdiction to review the per curiam affirmance of his resentencing appeal entered by the Fifth DCA on September 7, 2010. Thus, the Fifth DCA was Moore's "state court of last resort" for purposes of Supreme Court Rules 13.1 and 13.3. Nor did Moore ever seek review in the Supreme Court of the United States. As a result, Moore's conviction and sentence became final upon the expiration of his time for seeking review in the Supreme Court. This occurred by operation of law on December 6, 2010, which is ninety days after September 7, 2010, the date on which the Fifth DCA affirmed Moore's resentencing on appeal.

The one-year AEDPA statute of limitations did not start running on December 6, 2010, however, because Moore's Rule 3.850 motion was already pending on that date. Because a Rule 3.850 motion involves a collateral attack that is initially filed in the sentencing court, Baker v. State, 878 So. 2d 1236, 1239,

15

1245 (Fla. 2004), the motion is considered pending until the mandate issues in any appellate proceedings, Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000).  In the present case, no party or court has suggested that the Rule 3.850 motion was not "properly filed" under AEDPA.  Once again, they really could not.  In any event, Moore's Rule 3.850 motion was pending until June 8, 2011, when the Fifth DCA entered its mandate in Moore's appeal from denial of the motion.  It is this date that becomes "day zero" for purposes of calculating the number of days that have passed under the one-year AEDPA statute of limitations applicable to Moore's federal habeas petition.  Indeed, the parties and the district court all agree that this much is true.

**2.    Moore's state habeas petitions were both timely and properly filed because Moore filed both petitions before the applicable two-year state statute of limitations expired.**

Florida law requires petitions alleging ineffective assistance of appellate counsel to be filed no later than two years (four if there are allegations that petitioner was "intentionally misled") after any appellate mandate enters in the initial proceedings.  Fla. R. App. P. 9.141(d)(5).  Importantly, the statute of limitations does not start running until both the judgment and sentence become final on direct appeal.  In re Amendments to Florida Rules of Appellate Procedure—Rule 9.141 and Rule 9.142, 969 So. 2d 357, 359 (2007) (amending relevant statute of limitations to clarify that state habeas petitions alleging

16

ineffective assistance of appellate counsel must be filed no more than two years "after the judgment and sentence" become final on direct appeal); see also Mendoza v. State, 224 So. 3d 836, 837 (Fla. 3d DCA 2017) (noting requirement in Rule 9.141(d)(5) that "[a] petition alleging ineffective assistance of appellate counsel on direct review shall not be filed more than 2 years after the judgment and sentence become final on direct review"); Chance v. State, 65 So. 3d 1176, 1176 (Fla. 1st DCA 2011) (same).  When it amended the applicable statute of limitations in 2007, the Supreme Court of Florida commented that even though the old rule could be read to suggest the "time period begins to run when the conviction alone becomes final . . . [,] the [new] rule makes clear that the time does not begin to run until both the judgment and sentence are final."  In re Amendments, 969 So. 2d at 359.  Again, the parties agree this much is true.

Here, the appellate mandate was entered in Moore's resentencing appeal on September 29, 2010.  As a result, Moore had until October 1, 2012[4] to bring any state habeas petitions alleging ineffective assistance of appellate counsel.  He filed his first state habeas petition on April 19, 2012.  He filed his second on August 30, 2012.  Consequently, both petitions were in fact timely filed before the two-year

---

[4] This date is shown as October 1, 2012 instead of September 29, 2012 because the latter date was a Saturday.  Under Florida's rules, the filing deadline is extended to the next business day if the end of a period falls on a Saturday, Sunday, or a legal holiday.  See Fla. R. App. P. 9.420(e); Fla. Rul. Jud. Admin. 2.514(a)(1)(C).

statute of limitations described in Rule 9.141(d)(5) expired.  The State does not dispute the foregoing timeline, and does not contend—and really could not contend—that the two-year state statute of limitations had expired before the filing of either of Moore's two state habeas petitions.

The State does argue before this Court that one or both of Moore's habeas petitions were not properly filed because they were successive and thus procedurally barred.  We are not persuaded by this argument.  As discussed supra, at part IV.A, binding precedent clearly establishes that the question whether a petition for state habeas relief is timely and properly filed is distinct from the question whether the claims contained in the petition are unmeritorious because they are subject to some other state law procedural bar.  See, e.g., Pace, 544 U.S. at 417, 125 S. Ct. at 1814.  Because Moore timely filed both of his state habeas petitions before the applicable two-year state statute of limitations expired, and because the State has not argued that the delivery and acceptance of either petition was otherwise not in compliance with the laws and rules governing filings (i.e., that Moore sent his petition to the wrong filing office, did not pay the appropriate filing fee, etc.), both petitions were properly filed and should have tolling effect under AEDPA during their pendency.  Artuz, 531 U.S. at 9, 121 S. Ct. at 364; Thompson, 595 F.3d at 1236; Hardy, 246 F.3d at 1302.

18

**3.** **Moore's first state habeas petition tolled the one-year AEDPA statute of limitations for a total of 113 days, and his second state habeas petition tolled it for a total of 62 days.**

In Florida, petitions alleging ineffective assistance of appellate counsel are original proceedings in the district courts of appeal. See Fla. R. App. P. 9.141(d)(2). Because there is no "decision below" in such proceedings, there is no trial court to which an appellate mandate can be delivered. See State ex rel Davis v. City of Avon Park, 151 So. 701, 702 (Fla. 1933) ("In this case, being a case of original jurisdiction, the matter of sending down a mandate is, of course, immaterial, and has no application."); Ketcher v. Ketcher, 198 So. 3d 1061, 1063 (Fla. 1st DCA 2016) ("The mandate is the official mode of communicating the judgment of the appellate court to the lower court, directing the action to be taken or the disposition to be made of the cause by the trial court.") (citation and internal quotation marks omitted). Thus, an unappealed state habeas petition initially filed in a Florida intermediate appellate court remains pending for AEDPA purposes until the intermediate appellate court denies a rehearing, if one is requested. See Lawrence v. Florida, 549 U.S. 327, 332, 127 S. Ct. 1079, 1083 (2007) ("State review ends when the state courts have finally resolved an application for state postconviction relief. . . . The application for state postconviction review is

19

therefore not "pending" after the state court's postconviction review is complete . . . .").

The Fifth DCA denied Moore's request for a rehearing on the denial of his first state habeas petition on August 10, 2012, 113 days after it was filed on April 19, 2012.  The Fifth DCA later denied Moore's request for a rehearing on the denial of his second state habeas petition on October 31, 2012, 62 days after it was filed on August 30, 2012.  Thus, Moore was entitled to a cumulative total of 175 tolling days under § 2244(d)(2) as a result of having properly filed both of his state habeas petitions.

**4.    The one-year AEDPA statute of limitations applicable to Moore's federal habeas petition did not expire until after Moore filed his amended federal habeas petition.**

Having established that the one-year AEDPA statute of limitations applicable to Moore's federal habeas petition did not start running until June 8, 2011 (when the appellate mandate entered in his Rule 3.850 proceeding), and having further established that both of Moore's state habeas petitions were properly filed and thus entitled to tolling effect under AEDPA, we must now

20

consider whether Moore's amended federal habeas petition was timely filed. We conclude that it was.

After June 8, 2011, nothing of consequence occurred in this case until April 19, 2012 when Moore filed his first state habeas petition.[5] At this point in time, 316 days of the one-year AEDPA statute of limitations had passed between June 8, 2011 and April 19, 2012. Moore's first state habeas petition was pending from April 19, 2012 through August 10, 2012 (when the Fifth DCA denied his request for a rehearing on this first petition), and the one-year AEDPA statute of limitations was tolled during this time. Another 20 days of the one-year AEDPA statute of limitations elapsed between August 10, 2012 and August 30, 2012 (when Moore filed his second state habeas petition). Thus, 336 days of the one-year AEDPA statute of limitations had elapsed. The second state habeas petition was pending from August 30, 2012 through October 31, 2012 (when the Fifth DCA denied Moore's request for a rehearing on this second petition), and the one-year AEDPA statute of limitations was again tolled during this time. Another fifteen days passed from October 31, 2012 through November 15, 2012, when Moore filed his amended federal habeas petition in district court. As a result, after giving

---

[5] Moore did file his initial federal habeas petition on July 21, 2011, but that filing does not toll the one-year AEDPA statute of limitations. Duncan v. Walker, 533 U.S. 167, 181–82, 121 S. Ct. 2120, 2129 (2001) (holding that an application for federal habeas corpus review is not an "application for State post-conviction or other collateral review" under § 2244(d)(2) and therefore does not toll the limitation period).

21

proper tolling effect to both of his state habeas petitions under § 2244(d)(2), only 351 of the 365 days available to Moore under § 2244(d)(1) had passed when he filed his amended federal habeas petition.

Correct application of the law to the admittedly complicated facts of this case makes it is clear that Moore timely filed his amended federal habeas petition. The State argues that this does not necessarily mean the district court abused its discretion in denying Moore's Rule 60(b)(6) and Rule 59(e) motions. It is this question we consider next.

## C.

The district court did abuse its discretion in denying Moore's Rule 60(b)(6) motion and each of his Rule 59(e) motions. We begin with the familiar principle that "the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." Bowen v. Johnston, 306 U.S. 19, 26, 59 S. Ct. 442, 446 (1939). And although the district court is entitled to a great deal of deference when ruling on post-trial motions like those at issue here, the successive errors of law committed by the district court in dismissing Moore's amended federal petition as untimely are enough to compel reversal under the circumstances. In this case, the risk of injustice to Moore and the risk of undermining the public's confidence in the judicial process are both relatively high.

22

In denying Moore's Rule 60(b)(6) motion, the district court acknowledged that its initial order had incorrectly applied Gonzalez to find that Moore's judgment became final for AEDPA purposes a full two months before it actually had. It still denied Moore's Rule 60(b)(6) motion, however, because it relied on the Bennett v. Fortner presumption to find that Moore's first state habeas petition was untimely and thus not properly filed. Although the State's arguments in this Court do not focus on it, the question of whether the district court abused its discretion in relying on the Bennett presumption to conclude that the Fifth DCA "applied the time bar" in denying Moore's first state habeas petition is a significant issue. Accordingly, we address this potential argument here.

Bennett states that "when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default." Bennett, 863 F.2d at 807. It is true that the Fifth DCA's order denying Moore's first state habeas petition did not clearly indicate that it was reaching the merits because it denied the petition without any reasoning whatsoever. We need not decide in this case whether the Bennett presumption is appropriate in this somewhat different context—i.e., where a federal district court seeks to divine the meaning of an unreasoned denial in an original appellate court proceeding for purposes of applying a statute of limitations. We can assume arguendo, but expressly do not

23

decide, that the presumption could apply.  However, the presumption only properly applies "in the absence of any evidence to the contrary."  Id. at 807 (quoting Nichols v. Wainwright, 783 F.2d 1540, 1542 (11th Cir. 1986), abrogated on other grounds by Lindsey v. Smith, 820 F.2d 1137, 1143 (11th Cir. 1987)).  This is consistent with rules established by the Supreme Court with respect to analogous presumptions.  See, e.g., Harrington v. Richter, 562 U.S. 86, 99–100, 131 S. Ct. 770, 785 (2011) (noting that state court may be presumed to have denied relief on the merits in the absence of any indication or state-law procedural principles to the contrary but that "[t]he presumption may be overcome when there is some reason to think some other explanation for the state court's decision is more likely").

In this case, there is strong evidence that the Fifth DCA did not deny Moore's first state habeas petitions on untimeliness grounds.  As Moore's pleadings and this opinion have demonstrated, Moore's first state habeas petition was in fact clearly timely.  To find that the Fifth DCA applied the time bar in denying Moore's first state habeas petition, we would be required to assume the Fifth DCA committed clear legal error in applying the law of its own state.  We would be reluctant to assume that the Fifth DCA was unaware of the 2007 change to Florida law clarifying that the two-year state statute of limitations for certain state habeas petitions runs not from the date the conviction is finalized but instead from the date any resentencing appeal is finalized.  This change occurred some five

24

years before the Fifth DCA denied Moore's first state habeas petition, and we decline to assume that the Fifth DCA acted in a wholly unreasonable manner in either ignoring or misapplying a five-year-old, straightforward state law.  See Wilson v. Sellers, ___ U.S. ___, 138 S. Ct. 1188, 1196 (2018) (noting in similar "look through" analysis that "it is more likely that a state supreme court's single word 'affirm' rests upon alternative grounds where the lower state court decision is unreasonable").

Moreover, when asked by the Fifth DCA to respond to Moore's first state habeas petition, the State presented three different arguments.  In addition to arguing that Moore's petition was untimely because his "convictions became final on November 6, 2009, when mandate issued from his direct appeal of his judgments and sentences," the State also argued the petition was procedurally barred because it presented claims that could have been raised in Moore's initial direct appeal.  The State also responded to the double jeopardy arguments Moore raised in his petition and ultimately asked the court to "dismiss the petition as untimely, or alternatively, deny all relief."  The Fifth DCA then entered a one word order indicating only that the petition was "denied."

The fact that the State's briefing provided two other strong reasons for the Fifth DCA to deny the petition—either of which would not have prevented the motion from being "properly filed" and having tolling effect—further supports our

25

conclusion that it was error for the district court to presume that the Fifth DCA necessarily applied the time bar in denying Moore's petition.  This is especially so when these two alternative reasons are not demonstrably incorrect, as is the case with the State's argument before the Fifth DCA that Moore's convictions became final on November 6, 2009, almost an entire year before mandate issued in his resentencing appeal.

We find further support for our conclusion in the fact that Bennett emphasized that "the state trial court's order on appellant's 3.850 motion provided guidance for the state appellate court's per curiam affirmance."  Bennett, 863 F.2d at 808.  This is significant because both of Moore's state habeas petitions were original proceedings in the Fifth DCA, and there is "no other court opinion provid[ing] guidance as to whether the court reached" any particular issue in denying those petitions.  See id. at 807–08.  For the foregoing reasons, we conclude that the district court committed a clear error in judgment and abused its discretion in relying on the Bennett presumption to find that Moore's first state habeas petition was untimely.

## D.

In his first Rule 59(e) motion, Moore correctly argued that his first state habeas petition was in fact timely.  In denying this motion, the district court

26

retreated from its use of the <u>Bennett</u> presumption[6] and addressed Moore's timeliness argument head on, concluding this time that his first state habeas petition was untimely because the two-year state statute of limitations started running on November 6, 2009 and Moore did not file his first state habeas petition until April 19, 2012. In reaching this conclusion, the district court thought the fact "[t]hat Moore was subsequently re-sentenced is irrelevant under Rule 9.141(d)(5)."

This miscomprehended the law. The Supreme Court of Florida unmistakably clarified eight years before the district court's decision that the two-year state statute of limitations applicable to habeas petitions alleging ineffective assistance of appellate counsel "does not begin to run until both the judgment and sentence are final." <u>In re Amendments</u>, 969 So. 2d at 358. As demonstrated above, Moore's conviction and sentence did not become final until September 29, 2010 when the Fifth DCA entered its appellate mandate affirming Moore's resentencing. It is from this date—almost a full year after the date proposed by the State and used by the district court—that the district court should have calculated the running of the statute of limitations applicable to Moore's state habeas petitions. To the extent the district court relied on a Fifth DCA case decided before the Supreme Court of Florida's amendments to Rule 9.141 and Rule 9.142

---

[6] This retreat by the district court further undermines the district court's reliance on <u>Bennett</u>, and supports our conclusion in part IV.C.

27

took effect in reaching a different conclusion, see Order Den. Pet'rs Rule 59(e)

Mot., ECF No. 39, at 2 n.1 (citing Carter v. State, 929 So. 2d 1161 (Fla. 5th DCA

2006)), it did so in error.  Therefore, the district court abused its discretion in

denying Moore's first Rule 59(e) motion.

## E.

The district court committed a final legal error in denying Moore's second

Rule 59(e) motion.  In response to the denial of his first Rule 59(e) motion, Moore

argued in his second Rule 59(e) motion that no mandate issued on November 6,

2009 following his initial conviction appeal because that appeal was not finalized

until the Fifth DCA entered its September 29, 2010 mandate after resentencing.

The district court denied relief again, concluding generally that Moore had failed to

show "any manifest errors of law or fact."  But, as discussed supra at part IV.D, the

district court had committed a manifest error of law in denying Moore's first Rule

59(e) motion.  Following a close review, we conclude that Moore's arguments

plainly were enough to put the district court on notice of its error.  As a result, the

district court abused its discretion in not granting Moore's final Rule 59(e) motion.

We note here that neither of Moore's Rule 59(e) motions can reasonably be

construed as efforts "to relitigate old matters, raise argument or present evidence

28

that could have been raised prior to the entry of judgment." King, 500 F.3d at 1343 (citation omitted). Instead, Moore responded to a different legal error in each of his three post-trial motions. When Moore pointed out in his Rule 60(b)(6) motion that the district court had misread Gonzalez, the district court then incorrectly relied on the Bennett presumption to deny his petition. When Moore explained in his first Rule 59(e) motion that his first state habeas petition was timely, the district court retreated from its former reliance on Bennett and instead applied abrogated Florida law and started the state statute of limitations almost a year too soon, denying Moore the benefit of the tolling that comes with any "properly filed" application for state postconviction relief under AEDPA. When Moore then correctly argued that the state statute of limitations should have run from September 29, 2010, the district court said he had simply "repeat[ed] the arguments raised in his earlier motions for reconsideration." Given the successive nature of the errors in those earlier motions for reconsideration, it is difficult to see how Moore persisted in raising arguments that could have been raised before the judgment was entered.

## V.

We finally take an opportunity to address two of the State's other arguments in support of an affirmance. First, the State argues broadly that the COA was improperly granted. Even assuming the State's briefing has not waived any

29

challenge to the COA by failing to sufficiently elaborate on its arguments in this regard (which is somewhat doubtful), and even assuming there is a defect in the COA, "once a judge has made the determination that a COA is warranted and resources are deployed in briefing and argument . . . the COA has fulfilled [its] gatekeeping function." Gonzalez, 565 U.S. at 145, 132 S. Ct. at 650. Moreover, it is axiomatic that a "defective COA is not equivalent to the lack of any COA." Id. at 137, 132 S. Ct. at 649. Consequently, we disagree with the State's argument that Moore's appeal is not properly before this Court and thus we exercise our discretion to hear his appeal.

Next, the State argues that Moore's efforts to amend his federal habeas petition are somehow barred by Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides that, in most circumstances, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Reflecting a liberal policy with respect to amendments, the rule provides that "[t]he court should freely give leave when justice so requires." Id.; see also Stevens v. Gay, 864 F.2d 113, 116 (11th Cir. 1989) (noting that "[t]he Federal Rules of Civil Procedure provide for liberal amendment of pleadings"). Generally, this Court reviews a district court's decision to grant or deny leave to amend under an abuse of discretion standard. See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1264 (11th Cir. 2011). Even assuming

30

this issue is not outside the scope of the COA granted by this Court (it likely is), the district court exercised its discretion in granting Moore leave to amend his original federal habeas petition; we do not conclude the district court abused its discretion in that regard.

To the extent not expressly addressed in this opinion, all other efforts of the State to avoid reversal are without merit and warrant no discussion. We hold that the district court erred in denying as untimely claims seven through ten of Moore's amended 28 U.S.C. § 2254 petition.[7]

## VI. Conclusion

For the foregoing reasons, the judgment of the district court denying as untimely the claims of ineffective assistance of appellate counsel (i.e., claims seven through ten of Moore's amended 28 U.S.C. § 2254 petition) is **VACATED**, and this case is **REMANDED** to the district court with instructions to further consider said claims seven through ten in a manner not inconsistent with this opinion.

**VACATED** and **REMANDED**.[8]

---

[7] We note that the underlying claims in the amended petition involve only claims of ineffective assistance of appellate counsel.

[8] The Court notes that Marisa C. Maleck was appointed to represent Moore on appeal. The Court appreciates her commendable advocacy which greatly assisted us in the proper analysis of the complicated procedural facts of this case.

31